IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 16-00478-17-TUC-JGZ(LAB) |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| Andrei Rene Garcia, | ) | |
| Defendant. | ) | |

The District Court referred this case to the Magistrate Judge for a hearing on the defendant's motion to suppress statements. The defendant, Andrei Rene Garcia, argues that all statements, taken on 12/29/15 at his home, and evidence obtained as a result of the statements must be suppressed because he was in custody and not given his *Miranda* warnings, and his statements were involuntary, in violation of his Fifth Amendment rights. (Doc. 749).

An evidentiary hearing was held on 8/17/17. Special Agent Jason Red, Maria Morales, and the defendant each testified. Government's Exhibit 3 was admitted by stipulation for purposes of this hearing only.

**Charge:**

The defendant is charged in Counts 49 and 59 of the indictment with smuggling goods from the United States and conspiracy to attempt to export firearms and ammunition from the United States, in violation of 18 U.S.C. §§ 554(a) and 371.

**Motion to Suppress:**

The defendant argues that his Fifth Amendment rights were violated when Special Agents Red and Adler interviewed him at his home, in his bedroom, on 12/29/15. Mr. Garcia argues that he was in custody when the agents followed him into his bedroom at his parents' home, shut the door, shutting his father out, and questioned him. He claims that the agents implied he would go to jail if he did not answer their questions and he was worried that his mother would be frightened. A reasonable person in Mr. Garcia's situation would not feel free to leave or refuse to answer questions. The defendant argues that his statements were involuntary because he was only 19 years old, did not graduate from high school, had no prior contact with law enforcement, and was not advised of his *Miranda* rights.

The government responds that the agents asked Mr. Garcia if they could speak with him away from his parents and the defendant agreed. The interview was conducted by two agents in plain clothes with no weapons visible. Mr. Garcia told the agents that he had no problem speaking with them. The interview lasted 51 minutes. Mr. Garcia was not arrested at that time. He was not in custody and his statements were voluntary. The government acknowledges that no *Miranda* warnings were given because the interrogation was not custodial.

The Court concludes that Mr. Garcia was not in custody. The circumstances of the questioning did not require *Miranda* warnings. The agents did not engage in any coercion. The statements were given voluntarily based on the totality of the

circumstances. The statements, and any evidence stemming from the statements, are admissible at trial.

**EVIDENCE:**

*Jason Red* has been a special agent (SA) with Homeland Security Investigations (HIS) for 13 years. Prior to that, he was a U.S. Border Patrol Agent for 1 ½ years. Before interviewing the defendant on 12/29/15, 20 people had been identified in an investigation regarding large numbers of guns and ammunition that were being smuggled into Mexico through Nogales. One of the targets was the defendant's brother, and now co-defendant, Luis Fidel Garcia.

On 12/23/15, agents followed Mr. Garcia and his brother to Phoenix. Based on their surveillance, the agents believed that a vehicle dropped off in Nogales weapons that the brothers purchased that day. On 12/29/15 the agents received and reviewed a video of aerial surveillance from 12/23/15 which showed that the weapons had been offloaded at Andrei Garcia's home. The video showed Luis Garcia taking the weapons out of the vehicle and walking toward the southwest corner of the home. It was later determined that was where the defendant's bedroom is located. They thought the weapons may have been passed through the window and might still be at the home. The agents wanted to search quickly and recover the firearms. At that point, Mr. Garcia was considered a person of interest.

Four agents went to the home on 12/29/15 in two unmarked vehicles. They wore police tactical gear. When they arrived at Mr. Garcia's parents' home they took off the tactical gear and approached the house in plain clothes with neck badges. Mr. Garcia's grandmother answered the door. She gave the agents the telephone number for Mr. Garcia's mother, Maria Morales. The agents call Ms. Garcia. She was at work. They explained that they were looking for weapons and needed to speak with the defendant.

Ms. Morales was cooperative. The agents waited at the house for about 1 ½ to 2 hours

for her to return from work. Ms. Morales invited the agents in. They sat at the kitchen table. After explaining the situation, Ms. Morales gave permission for the agents to search the house. No weapons were located. At the agents' request, Ms. Morales called the defendant at work. Mr. Garcia got permission to leave early. His father picked him up and brought him home. Agent Gibes told Mr. Garcia and his mother that they could speak privately. When Ms. Morales explained to Mr. Garcia what the agents wanted, Mr. Garcia turned to them and said the guns were gone.

Agent Red asked if he could speak with the defendant privately so he would be more comfortable. Ms. Morales had already explained that she did not like guns in the house. Mr. Garcia agreed without hesitation. Agents Red and Adler followed the defendant to his room. Mr. Garcia stood on one side of the bed, with the agents on the other side, closest to the door. Agent Adler asked the father to leave and close the door, which he did without hesitation.

The agents never told Mr. Garcia that they were investigating him, or that he was a suspect, or that he had to speak with them. They told him that they wanted to hear his side of the story. Mr. Garcia spoke without hesitation and provided a great deal of detail about the events of 12/23/15. The information was accurate and candid. The agents did not have to prod him. Initially, Mr. Garcia was nervous, but he relaxed, was matter of fact, and laughed and joked at times. The interview was recorded. (Government's Ex. 3).

Towards the end of the interview Mr. Garcia said he hadn't done anything wrong. The agents explained the concept of conspiracy and told Mr. Garcia that he was in this conspiracy. Mr. Garcia became nervous. Agent Red left his phone number with Mr. Garcia in case he had questions or wanted to speak with him again. The agents did not arrest Mr. Garcia on 12/29/15, nor did they say anything about jail.1 They did not

---

1 The defense argued that the agent said, "I do not want to jail you up", which implied that if the defendant did not speak with them he would be taken to jail. Upon careful review of Ex. 3, the Court finds that twice (at 4:13 and 14:43) the agents said they did not want to "jam you up". There was no mention of jail. They also stated that Luis had a chance not to "jam you up" and by lying he "jammed you up."

- 4 -

threaten to charge him. They did not read him his rights and did not tell him he was free to leave or that he did not have to answer their questions. While Agents Red and Adler questioned Mr. Garcia in the bedroom, Agents Gibes and Russell waited in the living room, talking to the family.

On cross examination, Agent Red testified that after conducting surveillance and speaking to Luis Garcia, the defendant's older brother, a couple of times, Luis Garcia became a suspect. The agents knew that Andrei Garcia was with his brother on 12/23/15 when Luis acquired the guns but had no information that Andrei handled the guns or money. He was not a suspect.

*Maria Morales* is Andrei Garcia's mother. She is employed by DES as an eligibility worker. On 12/29/15 her mother called her at work and told her there were officers at the home. An agent spoke with her on the phone and asked when she would be home from work. When she got home, she remembers seeing 5 or 6 officers there. She was shown a video of the surveillance and was told that the agents needed to ask her son some questions. The agents did not have a search warrant, so Ms. Morales signed a consent to search.

The agents asked Ms. Morales to call the defendant at work, which she did. Mr. Garcia got permission to leave early and asked for a ride home. His father went to pick him up. Ms. Morales was nervous.

When Mr. Garcia arrived at the house, Ms. Morales told him the agents were looking for guns. Mr. Garcia walked to his room with the two agents. Ms. Morales told Andrei's father to follow. He did not go into the room. The door was closed. Ms. Morales and the father spoke with an agent, making small talk. There were 2 to 3 agents outside. The grandmother was in the living area. The agents were respectful. Andrei Garcia looked normal when he went to speak with the agents. He looked worried when he came out of the bedroom.

*Andrei Rene Garcia* had just turned 19 years old the month before Agents Red and

Adler interviewed him. He quit school in 10th grade in order to work. He was employed at Walmart for one year as a courtesy associate, helping to bring in, load, and unload carts.

On 12/23/15, Mr. Garcia travelled to Phoenix with his brother Luis. On 12/29/15 his mother called him and said that officers wanted to talk to him. His mother sounded worried. Mr. Garcia asked his supervisor if he could leave work early. His father picked him up. Mr. Garcia was scared when he saw the agents outside the house. When he went inside he spoke to his mother, who told him the agents had searched the house looking for guns.

The agents asked Mr. Garcia where they could speak privately, and the defendant suggested talking in his room. Two agents followed Mr. Garcia, and his father followed as well. The agents didn't say anything, but they closed the door, closing his father out. Mr. Garcia walked to the other side of his room. The agents stood near the door. They did not advise him of his rights and did not tell him he could leave or stop the questions. The agents asked questions and Mr. Garcia answered. They told Mr. Garcia that they had spoken to Luis and his brother had gotten him into this situation.

Mr. Garcia was scared and thought that if he didn't answer the questions, he would go to jail. He did not think to ask to leave and did not think he could stop answering questions. He had never been arrested or advised of his rights before. He knew the agents and his family were outside the room. He never asked if his father could come in. Mr. Garcia was not handcuffed and was free to move around his room. He was very cooperative and provided a lot of information to the agents. He did not tell them he was afraid, although at the end of the interview he was sad and scared.

***Government's Exhibit 3*** is the recording of the interview. It is 23 ½ minutes in length. The recording memorializes Ms. Morales telling Mr. Garcia that the agents were looking for guns and Mr. Garcia tells the agents the guns are gone. It also includes the discussion about where to speak privately and all conversation in Mr. Garcia's bedroom. On the

recording, Mr. Garcia sometimes sounds nervous, but generally sounds relaxed. He can be heard joking and laughing at times. The agents' tone is friendly and calm. They explain that they do not have a warrant and are not there to arrest Mr. Garcia. At the end of the interview the recording concludes with the agents thanking the family and goodbyes and wishes for a happy new year.

**DISCUSSION**:

When a person is taken into custody, or otherwise deprived of freedom of action in a significant way, and questioned by law enforcement officers, he must be first "warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney..." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "[A]n officer's obligation to administer *Miranda* warnings attaches only where there has been such a restriction on a person's freedom as to render him in custody." *Dyer v. Hornbeck*, 706 F.3d 1134, 1138 (9th Cir. 2013) (quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994)) (punctuation modified). The totality of the circumstances surrounding the interrogation must be examined by the court, but ultimately the inquiry is whether there was a formal arrest or the defendant's restraint of freedom of movement was "of the degree associated with a formal arrest." *Stansbury*, *Id.*

The initial inquiry in determining custody is whether, under the circumstances, a reasonable person would have felt free to terminate the interrogation and leave. *U.S. v. Barnes*, 713 F.3d 1200, 1204 (9th Cir. 2013). Reasonableness is an objective standard. *U.S. v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002). The Court must also consider the circumstances surrounding the interrogation. The relevant factors the court considers when deciding if an interrogation was custodial "include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Howes v. Fields*, 132 S.Ct. 1181, 1189 (2013) (citations omitted).

In the present case, the location of the questioning was at the defendant's home in his bedroom. It is hard to imagine a place where the defendant would feel more comfortable. Also, the defendant chose the location to speak privately with the agents. The agents were at the house for several hours but were only with the defendant for about half an hour, from the time he came home from work until the agents left. The interview lasted 23 ½ minutes. Mr. Garcia spoke freely and offered a lot of detail in answering questions. There was no hesitation. Mr. Garcia was not physically restrained, although the agents stood between him and the bedroom door. He was free to move about. The agents told Mr. Garcia that they were not there to arrest him. When the interview was over, the agents exchanged pleasantries and left Mr. Garcia to go about his business.

Mr. Garcia was scared, as a reasonable person would be, when federal agents came to his home to question him about criminal activity, but the agents did nothing more than that. Under the totality of the circumstances, a reasonable person would feel free to refuse to speak with the agents, refuse to invite them into his bedroom and would feel free to leave, or not come home from work early. His mother left the agents waiting for over an hour until she finished work. Mr. Garcia was not in custody. *Miranda* warnings were not required.

Even in the absence of an obligation to provide *Miranda* warnings, a confession must be voluntary to be admissible. *Lego v Twomey*, 404 U.S. 477, 483-485 (1972), *see also* 18 U.S.C. § 3501(a). The government has the burden of proving by a preponderance of the evidence that a statement is voluntary. *Id.* at 489. In determining whether the statements were made voluntarily, the Court must consider "the totality of the circumstances." *Arizona v. Fulminante.*, 499 U.S. 279, 285 (1991). The inquiry is whether "a defendant's will was overborne by the circumstances surrounding the giving of the confession." *U.S. v. Wright*, 625 F.3d 583, 603 (9th Cir. 2010) (citations omitted).

A statement may be determined to be involuntary if it is obtained by threats or violence,

or by direct or implied promises, even if slight, or by exertion of improper influence. *Beaty v Schriro*, 509 F.3d 994, 999 (9th Cir. 2007) (quoting *Hutto v. Ross*, 429 U.S. 28, 30 (1976) (internal quotations omitted)). The Court should consider the degree of police coercion; the length, location and continuity of the interrogation; and the accused's youth, maturity, level of education, physical condition and mental health. *U.S. v. Preston*, 706 F.3d 1106, 1114 (9th Cir. 2013). In order to find a confession is not voluntary, there must be a finding of coercive police activity. *Colorado v. Conelly*, 479 U.S. 157, 167 (1986). The coercion can be physical intimidation or psychological pressure. *U.S. v. Preston*, 706 F.3d 1106, 1114 (9th Cir. 2013). A defendant's mental capacity alone is not enough to render a confession involuntary. *Id.* at 1115.

In the current case, there is no evidence of police coercion, either physical or psychological. The agents told Mr. Garcia that they were not there to arrest him and they did not arrest him. The interview lasted only 23 ½ minutes and was conducted in the defendant's bedroom with his family just outside the door. Mr. Garcia is young but is an adult. He is mature enough to hold a job and to express himself clearly. He attended school up until 10th grade. He was not in any physical distress and there was no evidence that he suffers from any mental health issues. There is no evidence that his will was overborne.

The defendant's statements were voluntary and were not taken in violation of *Miranda*.

**RECCOMMENDATION**:

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court **DENY** the motion to suppress statements. (Doc. 749)

Defense counsel may serve and file written objections within 14 days. If objections are not timely filed, the party's right to de novo review may be waived. No reply to objections shall be filed unless leave is granted from the District Court.

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

DATED this 7th day of September, 2017.

_Leslie A. Bowman_
Leslie A. Bowman
United States Magistrate Judge